UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

SOUTHWEST AIRLINES CO.,                    )
                                           )
            Plaintiff,                     )
                                           )          CIVIL ACTION NO.
VS.                                        )
                                           )          3:16-CV-3536-G
TRANSPORT WORKERS UNION OF                 )
AMERICA, AFL-CIO, LOCAL 555,               )
                                           )
            Defendant.                     )

## MEMORANDUM OPINION AND ORDER

Before the court are two motions: (1) the motion of the plaintiff Southwest

Airlines Company ("Southwest") for summary judgment (docket entry 22), and

(2) the motion of the defendant Transport Workers Union of America, AFL-CIO,

Local 555 ("TWU Local 555") for summary judgment (docket entry 25). For the

reasons set forth below, the plaintiff's motion is granted in part and denied in part,

and the defendant's motion is granted in part and denied in part.

## I. BACKGROUND

Southwest brought this action against TWU Local 555 seeking judicial review

of statutorily and contractually mandated arbitration proceedings. *See* Amended

Complaint to Set Aside Arbitration Award ("Amended Complaint") ¶¶ 12-15 (docket entry 4). In response to Southwest's suit, TWU Local 555 asserted a counterclaim for enforcement of the arbitration award, dismissal of Southwest's claims, and remand of the case to arbitration for a hearing on the merits. Defendant TWU Local 555's Original Answer to Amended Complaint to Set Aside Arbitration Award and Counterclaim to Enforce Arbitration Award ("Answer and Counterclaim") at 12 (docket entry 11). In lieu of a trial, the parties have agreed to adjudication of the issues in this case by way of cross motions for summary judgment. *See* Defendant/ Counter-Claimant's Response to Plaintiff/Counter-Defendant's Motion for Summary Judgment ("TWU Local 555's Response") at 1-2 (docket entry 32).

## A. The Parties

Southwest is a corporation organized under the laws of the State of Texas, with its principal place of business located in Dallas, Texas. Amended Complaint ¶ 4. As one of the largest scheduled passenger airlines in the world and the largest carrier in the United States in terms of originating domestic passengers boarded, Southwest is a "common carrier" by air under the Railway Labor Act ("RLA"), 45 U.S.C. § 181.[1]

---

[1]     § 181 applies much of the RLA to "every common carrier by air engaged in interstate or foreign commerce, and every carrier by air transporting mail for or under contract with the United States Government, and every air pilot or other person who performs any work as an employee or subordinate official of such carrier or carriers, subject to its or their continuing authority to supervise and direct the manner of rendition of his service." 45 U.S.C. § 181.

Memorandum of Law in Support of Plaintiff Southwest Airlines Co.'s Motion for Summary Judgment ("Southwest's Brief") at 3 (docket entry 23); Amended Complaint ¶ 4.

TWU Local 555 is an unincorporated labor organization with principal offices in Dallas, Texas. Amended Complaint ¶ 5. Under the applicable provisions of the RLA, the labor organization is the exclusive collective bargaining representative for Southwest's ramp, operations, provisioning, and freight agents. Amended Complaint ¶ 5.

Southwest and TWU Local 555 are parties to a collective bargaining agreement ("CBA") that sets the rates of pay, rules, and working conditions for the approximately 13,000 ramp, operations, provisioning, and freight agents Southwest employs. Amended Complaint ¶ 6. Over the years the parties have entered into a number of CBAs, but the question of when the latest CBA became binding and effective on the parties lies at the center of this dispute.

### B. Context for the Present Action

Under the terms of the parties' CBA and pursuant to the RLA, grievances concerning the interpretation or application of the CBA are subject to arbitration.[2]

---

[2] According to Fifth Circuit precedent, "minor disputes" under the RLA, defined as grievances involving the interpretation and application of a CBA, must be resolved through compulsory and binding arbitration. *Continental Airlines, Inc. v. Air Line Pilots Association, International*, 555 F.3d 399, 405 (5th Cir. 2009).

*See* Southwest's Brief at 6; Amended Complaint ¶¶ 13-15. On March 28, 2016, TWU Local 555 filed a grievance in light of the parties' dispute over the interior cleaning of remaining overnight ("RON") aircraft. Southwest's Brief at 6, 7. According to Southwest, however, "[f]rom approximately 1982 until 2012, Southwest contracted out RON cleaning work with the Union's full knowledge, without objection." *Id.* at 6.

Long before filing its 2016 grievance, in 2012, TWU Local 555 filed two similar grievances, claiming in each that Southwest's use of third-party vendors for RON cleaning violated the terms of the parties' CBA. *Id.* at 7. But before arbitrators reached a decision on either of the 2012 disputes, TWU Local 555 withdrew its grievances. *Id.*

In November 2015, TWU Local 555 filed a third grievance, Grievance No. 5001/15, in light of the parties' RON cleaning dispute. *Id.*; Amended Complaint ¶ 16. This third grievance proceeded to arbitration before Elizabeth J. Neumeier ("Arbitrator Neumeier"). Southwest's Brief at 7. Arbitrator Neumeier presided over a hearing to address the grievance, but rather than litigating the merits, the parties limited their arguments to the issue of timeliness. *Id.* At the hearing before Arbitrator Neumeier, Southwest maintained that "the Union's grievance was untimely because the CBA requires that a grievance be filed within ten working days of when the filing party first has knowledge of an alleged contractual violation," and

"[b]ased on the evidence the parties presented at the arbitration hearing, the Union knew or should have known for *over thirty years* that Southwest was contracting out RON cleaning" (emphasis in original). *Id.*

On March 28, 2016, while the timeliness issue remained pending before Arbitrator Neumeier, TWU Local 555 filed a fourth grievance, Grievance No. 5000/16. *Id.*; Amended Complaint ¶ 16. In response to this development, Southwest argued that the fourth grievance was essentially identical to the grievance still pending before Arbitrator Neumeier, and -- like the previous filing -- the new grievance was time-barred because TWU Local 555 did not file it within the CBA's ten-day time limit. Southwest's Brief at 8. As to the timeliness issue, TWU Local 555 responded by arguing that its fourth grievance was timely because the parties entered into a new CBA, which was signed on March 16, 2016, and the latest grievance was filed within ten working days of that date. *Id.* at 8 n.2; *see also* Appendix to Plaintiff Southwest Airlines Co.'s Motion for Summary Judgment ("Southwest's Summary Judgment Appendix") at 208 (docket entry 24-1) ("[T]he Union contends that the current CBA became effective and enforceable on March 16, 2016, the date which is shown on the Execution page of the current CBA.").

On July 6, 2016, TWU Local 555's fourth grievance proceeded to a hearing before Arbitrator Dr. Daniel F. Jennings ("Arbitrator Jennings"). Southwest's Brief at 11. The parties' CBA establishes a system for selecting and removing individuals

from a panel of potential arbitrators, and under that system both Southwest and TWU Local 555 select an equal number of arbitrators to serve on the panel each time a new CBA takes effect. *Id.* at 10. Years earlier, under the terms of a prior CBA, TWU Local 555 selected Arbitrator Jennings as a member of the panel. *Id.* In May 2011, however, Southwest, citing its contractual right, removed Arbitrator Jennings from the panel. *Id.* at 11. After the parties' current CBA took effect, TWU Local 555 re-appointed Arbitrator Jennings. *Id.*

At the July 6, 2016 hearing, the parties agreed that in light of the pending matter before Arbitrator Neumeier, the proceedings before Arbitrator Jennings should be postponed until a decision was rendered on the timeliness of TWU Local 555's third grievance. *Id.* Arbitrator Jennings acquiesced to the parties' request and agreed to postpone the proceedings until after Arbitrator Neumeier issued her opinion. *Id.* at 11-12. On August 20, 2016, Arbitrator Neumeier issued a decision on the timeliness of the third grievance, concluding that the filing was untimely because TWU Local 555 failed to initiate the grievance within ten working days of the date it first had knowledge of the alleged contractual violation. *Id.* at 12.

Following the release of Arbitrator Neumeier's decision, on October 6, 2016, the parties reconvened before Arbitrator Jennings for the purpose of "determin[ing] the arbitrability of [TWU Local 555's fourth] grievance." *Id.* at 13 (quoting an October 4, 2016 email from Arbitrator Jennings to Southwest's Kevin Minchey

(Southwest's Summary Judgment Appendix at 170-71)). Subsequently, on December 16, 2016, Arbitrator Jennings issued a decision on the arbitrability of TWU Local 555's fourth grievance, concluding that it was timely filed and not barred by the doctrine of *res judicata*. *Id.* at 16. Specifically, on the timeliness issue, Arbitrator Jennings rejected Southwest's contention that the grievance was untimely because the parties' new CBA became effective on February 19, 2016 -- the date on which, according to Southwest, TWU Local 555 ratified the agreement. See *id.* at 24. Instead, Arbitrator Jennings accepted TWU Local 555's argument that it filed its fourth grievance in a timely manner because March 28, 2016 was within ten working days of March 16, 2016, the date on which the parties signed the latest CBA. *Id.* at 16; *see also* Southwest's Summary Judgment Appendix at 208-09.

Shortly after Arbitrator Jennings released his initial decision, Southwest contacted him requesting that he clarify the scope of his award. *See* Southwest's Brief at 17. According to Southwest, in his initial opinion, Arbitrator Jennings purported to rule on the merits even though the parties had agreed, before the October 6, 2016 hearing, that in advance of a separate hearing on the merits, Arbitrator Jennings would first decide threshold issues on the grievance's arbitrability. *Id.* at 17-18; *see also* Southwest's Summary Judgment Appendix at 209 ("The present grievance (5001/16) is sustained."). Although Arbitrator Jennings initially refused to clarify or

modify his award, after additional prodding by Southwest, on December 29, 2016, he released a second, revised award. Southwest's Brief at 18.

Dissatisfied with Arbitrator Jennings's revisions, Southwest filed this suit seeking to set aside the arbitration award. Amended Complaint at 1. TWU Local 555 asserted a counterclaim, requesting that the court uphold Arbitrator Jennings's decision, dismiss Southwest's claim, and remand the case to arbitration for a hearing on the merits. Answer and Counterclaim at 12. Although the parties argued a number of other threshold issues before Arbitrator Jennings -- in particular, the effect, if any, of *res judicata* on TWU Local 555's fourth grievance -- at this stage, it appears that the parties have narrowed their focus to a handful of issues. These remaining issues are examined below.

## C. The Parties' Contentions

### 1. *Southwest's Summary Judgment Motion*

In its motion for summary judgment, Southwest contends that the court should vacate Arbitrator Jennings's award for three primary reasons. First, Southwest maintains that Arbitrator Jennings exceeded his jurisdiction under the RLA and violated its due process rights by prematurely ruling on the merits of TWU Local 555's grievance when the parties explicitly limited his jurisdiction to a decision on the grievance's arbitrability. Southwest's Brief at 20. Second, Southwest contends that Arbitrator Jennings "also exceeded his jurisdiction when he held that the Union's

grievance was timely filed under the CBA's ten-working-day time frame requirement."

*Id.* In Southwest's view, Arbitrator Jennings ignored the "clear and express terms" of the parties' CBA -- which provide that the agreement would become effective on the date of ratification, rather than the date of signing -- and, in doing so, he exceeded the scope of the jurisdiction afforded to him. *Id.* Third, according to Southwest, Arbitrator Jennings evidenced bias and exhibited hostility towards Southwest and its representatives. *Id.* at 21. Such behavior, Southwest contends, "amounts to fraud or corruption under the RLA, and, therefore, constitutes an independent basis" upon which to vacate his award. *Id.*

In its response to the contentions provided in Southwest's summary judgment motion, TWU Local 555 offers four counter points.[3] First, TWU Local 555 emphasizes the significant deference federal courts afford arbitration awards under

---

[3] Southwest filed a reply contesting the arguments TWU Local 555 made in its response. Plaintiff Southwest Airlines Co.'s Reply in Support of Summary Judgment (docket entry 34). While Southwest's reply addresses the arguments found in TWU Local 555's response and re-asserts many of the arguments set forth in its motion, Southwest also maintains that because TWU Local 555's response was filed one day after the court's deadline and does not strictly comply with the local rules, the court should strike TWU Local 555's response, refuse to consider it, or both. *Id.* at 7-9. While the court recognizes that TWU Local 555 filed its response one day after the court's deadline -- after first requesting that the court extend the deadline to file a response (docket entry 30) -- and that TWU Local 555's response does not strictly adhere to the local rules, the court concludes that disregarding the response would be too harsh a penalty for TWU Local 555's misstep. In pursuit of an equitable and efficient resolution of this dispute, the court considers each of the parties' submissions.

the RLA.  *See* TWU Local 555's Response at 2-3.  Second, with this significant

deference in mind, TWU Local 555 maintains that because reasonable adjudicators

may disagree on whether the appropriate date for the CBA's effectiveness was the

date of ratification or the date on which the agreement was signed, the court should

not disturb Arbitrator Jennings's interpretation.  See *id.* 4-5, 8-9.  Third, according to

TWU Local 555, the timing of Southwest's argument on Arbitrator Jennings's alleged

bias demonstrates that the argument is merely "a last ditch effort to overturn a

decision [Southwest] see[s] as merely unfavorable."  See *id.* at 5.  Fourth, TWU Local

555 contends that even assuming Southwest's assertions on the issue of bias are

arguable, the evidence upon which Southwest relies -- a handful of interactions

between Arbitrator Jennings and Southwest's representatives -- is insufficient to

demonstrate actual bias in the arbitrator's decision making.  See *id.* at 5-8.

### 2.  *TWU Local 555's Summary Judgment Motion*

In addition to providing counter arguments in its response to Southwest's

motion, TWU Local 555 also filed a cross motion for summary judgment requesting

that the court enforce the underlying arbitration award, dismiss Southwest's claims to

vacate the award, and remand the issues to Arbitrator Jennings for a hearing on the

merits.  Defendant/Counter-Claimant's Brief in Support of Motion for Summary

Judgment ("TWU Local 555's Brief") at 1 (docket entry 26).  In its cross motion,

TWU Local 555 relies on many of the same arguments it provided in its response.

- 10 -

And according to TWU Local 555, "[Southwest] is simply trying to force this [c]ourt into re-litigating an issue -- on which reasonable minds clearly may disagree -- because the underlying arbitration didn't go in their favor." *Id.* at 3.

Southwest filed a response re-asserting many of the contentions set forth in its motion for summary judgment. *See* Plaintiff Southwest Airlines Co.'s Response Brief in Opposition to Defendant's Cross-Motion for Summary Judgment ("Southwest's Response") at 1 (docket entry 28). But, in its filing, Southwest also requests that "[t]o the extent the [c]ourt determines that a remand for further proceedings is warranted, Southwest submits that the [c]ourt should remand this dispute to a different arbitrator." *Id.* at 3.

After first providing the applicable legal standards, the court considers each of the parties' contentions in turn.

## II. <u>ANALYSIS</u>

### A. <u>Legal Standards</u>

#### 1. *Summary Judgment*

Summary judgment is proper when the pleadings, depositions, admissions, disclosure materials on file, and affidavits, if any, "show[ ] that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of

law." FED. R. CIV. P. 56(a), (c)(1).[4]  A fact is material if the governing substantive law identifies it as having the potential to affect the outcome of the suit.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  An issue as to a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  *Id.*; see also *Bazan ex rel. Bazan v. Hidalgo County*, 246 F.3d 481, 489 (5th Cir. 2001) ("An issue is '*genuine*' if it is real and substantial, as opposed to merely formal, pretended, or a sham.").  To demonstrate a genuine issue as to the material facts, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts."  *Matsushita Electric Industrial Company v. Zenith Radio Corporation*, 475 U.S. 574, 586 (1986).  The nonmoving party must show that the evidence is sufficient to support the resolution of the material factual issues in his favor.  *Anderson*, 477 U.S. at 249 (citing *First National Bank of Arizona v. Cities Service Company*, 391 U.S. 253, 288-89 (1968)).

When evaluating a motion for summary judgment, the court views the evidence in the light most favorable to the nonmoving party.  *Id.* at 255 (citing *Adickes v. S.H. Kress & Company*, 398 U.S. 144, 158-59 (1970)).  However, it is not incumbent upon the court to comb the record in search of evidence that creates a

---

[4]     Disposition of a case through summary judgment "reinforces the purpose of the Rules, to achieve the just, speedy, and inexpensive determination of actions, and, when appropriate, affords a merciful end to litigation that would otherwise be lengthy and expensive."  *Fontenot v. Upjohn Company*, 780 F.2d 1190, 1197 (5th Cir. 1986).

genuine issue as to a material fact. See *Malacara v. Garber*, 353 F.3d 393, 405 (5th Cir. 2003). The nonmoving party has a duty to designate the evidence in the record that establishes the existence of genuine issues as to the material facts. *Celotex Corporation v. Catrett*, 477 U.S. 317, 324 (1986). "When evidence exists in the summary judgment record but the nonmovant fails even to refer to it in the response to the motion for summary judgment, that evidence is not properly before the district court." *Malacara*, 353 F.3d at 405.

### 2. *Reviewing Arbitration Awards Under the RLA*

Review of arbitration awards under the RLA is "among the narrowest known to the law." *American Airlines, Inc. v. Allied Pilots Association*, No. 4:12-CV-0083-Y, 2012 WL 12872585, at *4 (N.D. Tex. Nov. 2, 2012) (Means, J.) (quoting *Union Pacific Railroad Company v. Sheehan*, 439 U.S. 89, 91 (1978)); see also *American Eagle Airlines, Inc. v. Air Line Pilots Association, International*, 343 F.3d 401, 405 (5th Cir. 2003) ("Judicial review of a labor-arbitration decision by this [c]ourt, or by the district court, is extremely limited."), *cert. denied*, 541 U.S. 935 (2004). "Where the arbitrator is 'even arguably construing or applying the contract and acting within the scope of his authority the fact that a court is convinced he committed serious error does not suffice to overturn that decision.'" *American Eagle Airlines*, 343 F.3d at 405 (quoting *Eastern Associated Coal Corporation v. United Mine Workers of America*, 531 U.S. 57, 62 (2000)). This high degree of deference "flows from the RLA's 'preference for

the settlement of disputes in accordance with contractually agreed-upon arbitration procedures.'" *Continental Airlines*, 555 F.3d at 405.

Under the RLA, courts must defer to an arbitrator's decision resulting from a dispute over a CBA unless (1) the arbitrator failed to comply with the RLA, (2) there exists evidence of fraud or corruption by the arbitrator, or (3) the arbitrator's order did not confine itself to matters within the scope of the arbitrator's jurisdiction. *American Airlines*, 2012 WL 12872585, at *4 (citing 45 U.S.C. §§ 153 First (q), 184). "Absent one of those exclusive grounds, or a judicially created exception for public policy concerns, [the court] must defer to the [arbitrator's] decision." *Continental Airlines*, 555 F.3d at 406; see also *American Airlines*, 2012 WL 12872585, at *4 (clarifying that, in addition to the exclusive grounds and public policy exception listed above, a due process violation might also be grounds for the court not to defer to the arbitrator's award).

An arbitrator's decision need only "draw its essence from the contracts and not simply reflect the [arbitrator's] own notions of industrial justice, so that the decision is grounded in the contracts." *Continental Airlines*, 555 F.3d at 406 (internal brackets and quotation marks omitted). The court may also review an arbitrator's award "to ensure that the arbitrator acted in conformity with the jurisdictional prerequisites of the CBA." *American Airlines*, 2012 WL 12872585, at *5 (quoting *Delta Queen Steamboat Company v. District 2 Marine Engineers Beneficial Association*, 889 F.2d 599,

602 (5th Cir. 1989), *cert. denied*, 498 U.S. 853 (1990)) (internal brackets omitted). In other words, if an arbitrator issues a decision that is contrary to an unambiguous provision of the parties' CBA, the arbitrator's action falls outside of the CBA-granted jurisdiction and, under such circumstances, the court may vacate, modify, or remand the decision. See *id.*

## B. Application

### 1. *Whether Arbitrator Jennings Exceeded His Jurisdiction*

#### a. Ruling on the Merits

"[C]ourts provide arbitrators a great deal of judicial deference, and 'a court must affirm an arbitral award as long as the arbitrator is even arguably construing or applying the contract and acting within the scope of his authority.'" *Aircraft Mechanics Fraternal Association v. Southwest Airlines Company*, No. 3:15-CV-3642-L, 2017 WL 2984012, at *7 (N.D. Tex. July 13, 2017) (Lindsay, J.) (quoting *Beaird Industries, Inc. v. Local 2297, International Union*, 404 F.3d 942, 944 (5th Cir. 2005)). But the court's deference ends at the point "when the arbitrator exceeds the express limitations of his contractual mandate." *Id.* (quoting *United Steel v. Delek Refining, Limited*, 575 Fed. App'x 330, 334 (5th Cir. 2014)) (internal quotation marks and brackets omitted). As stated above, if the arbitrator exceeded the authority granted to him by the parties' agreement, then the court may vacate, modify, or remand an arbitrator's ruling. *American Airlines*, 2012 WL 12872585, at *5.

- 15 -

According to Southwest, Arbitrator Jennings exceeded his jurisdiction by prematurely ruling on the merits of TWU Local 555's fourth grievance. *See* Southwest's Brief at 21-23. Southwest contends that the parties agreed prior to the arbitration proceedings before Arbitrator Jennings that the scope of the arbitrator's jurisdiction would be expressly limited to resolving two preliminary inquiries: "(1) whether the Union's grievance was barred by the doctrine of *res judicata*, and (2) if not, whether the Union's grievance was timely filed." *Id.* at 21-22. In Southwest's view, even though Arbitrator Jennings appeared to understand the scope of his jurisdiction prior to the October 6, 2016 hearing, he nonetheless purported to resolve the merits of the parties' dispute. *Id.* at 22; *see also* Southwest's Summary Judgment Appendix at 209 ("The present grievance (5001/16) is sustained."). Further, even after Arbitrator Jennings belatedly revised his award, the decision still contained language that, in Southwest's opinion, purported to rule on the grievance's merits. *See* Southwest's Summary Judgment Appendix at 250 ("Accordingly, the present grievance (5001/16) must be sustained.").

In support of its contention, Southwest cites *Brotherhood of Locomotive Engineers and Trainmen v. Union Railroad Company*, 660 F. Supp. 2d 582 (W.D. Pa. 2009), *appeal dismissed*, 391 Fed. App'x. 182 (3d Cir. 2010), a case in which the court concluded that where an adjustment board created pursuant to the RLA and by the terms of the parties' CBA ruled on questions not submitted by the parties, the board

exceeded its jurisdiction. *Id.* at 590. In such a case, the court concluded, it is appropriate for the court to vacate the board's decision. See *id.*; see also *Delta Queen*, 889 F.2d at 602 ("Where an arbitrator exceeds his contractual authority, vacation or modification of the award is an appropriate remedy.") (citing 9 U.S.C. § 10(d)).

Significantly, as Southwest points out, TWU Local 555 does not appear to contest Southwest's argument here. *See* Southwest's Brief at 22-23. In fact, none of TWU Local 555's pleadings seriously address the issue and, in its answer, TWU Local 555 admits that "no ruling on the merits of the grievance should have been made." Answer and Counterclaim ¶ 99.

To the extent that Arbitrator Jennings ruled on the merits of TWU Local 555's grievance or decided any issues beyond those related to arbitrability, such decisions exceeded the scope of his jurisdiction. Thus, the court finds it appropriate to vacate any and all portions of Arbitrator Jennings's award that venture beyond the threshold questions the parties presented.

b. Ruling on the Timeliness Issue

Southwest also argues that Arbitrator Jennings exceeded his jurisdiction based on the manner in which he interpreted the parties' CBA. *See* Southwest's Brief at 23. Although federal courts generally afford a high degree of deference to the decisions of arbitrators made pursuant to the provisions of the RLA and the terms of a CBA, well-established Fifth Circuit precedent makes clear that "an arbitrator may not ignore the

plain language of the [collective bargaining agreement]." *American Eagle Airlines*, 343 F.3d at 406. But see *Continental Airlines*, 555 F.3d at 406 ("The [arbitrator's] decision need only draw its essence from the contracts . . . so that the decision is grounded in the contracts. That is, as long as the arbitrator is even arguably construing or applying the contracts and acting within the scope of his authority, that a court is convinced he committed serious error does not suffice to overturn his decision.") (internal quotation marks and brackets omitted). According to Southwest, in concluding that TWU Local 555 filed its fourth grievance in a timely fashion because it submitted the grievance within ten working days of March 16, 2016, the date on which TWU Local 555 signed the latest CBA, Arbitrator Jennings exceeded his jurisdiction. Southwest's Brief at 23. Such a holding, Southwest contends, required Arbitrator Jennings to wholly ignore the "clear and unambiguous contract language that directly speaks to the effective date of the CBA." *Id.* at 23-24.

In support of this line of reasoning, Southwest submits four primary arguments. First, Southwest maintains that the CBA itself states that February 19, 2016 was the date on which the agreement became effective on the parties. *Id.* at 24. In particular, Southwest relies on the language found in a handful of CBA provisions. The following language is found on the cover page of the parties' CBA: "for the period February 19, 2016 thru February 18, 2021." Southwest's Brief at 25; Southwest's Summary Judgment Appendix at 5. Similarly, in Article 3(A), under the

header "Ratification," the CBA provides that "when this Agreement is accepted by the Company and ratified by the membership of the Union, it shall be binding on both the Company and the Union." Southwest's Brief at 25; Southwest's Summary Judgment Appendix at 6. Finally, in Article 29, the CBA provides that "[t]his entire Agreement shall remain in full force and effect as of the date of ratification through and including February 18, 2021." Southwest's Brief at 25; Southwest's Summary Judgment Appendix at 18. In ignoring this clear contractual language, Southwest contends, Arbitrator Jennings impermissibly dispensed "his own brand of industrial justice." Southwest's Brief at 25-26 (quoting *United Steelworkers of America v. Enterprise Wheel and Car Corporation*, 363 U.S. 593, 597 (1960)).

Second, Southwest references "other evidence" of the parties' intent. Specifically, Southwest presented Arbitrator Jennings with evidence regarding the implementation of certain aspects of the CBA, including provisions pertaining to part-time employees, wages, bonuses, and pay scale, and these provisions are explicitly tied to February 19, 2016, the date of ratification. *See* Southwest's Brief at 29-30. In Southwest's view, just as he ignored the CBA's plain language, Arbitrator Jennings ignored this additional evidence. See *id.* at 30. Third, as further evidence of Arbitrator Jennings's personal brand of industrial justice, Southwest argues that Arbitrator Jennings's decision runs contrary to recent decisions made by other arbitrators. See *id.* at 30-31.

Fourth, Southwest maintains that Arbitrator Jennings's award will negatively affect the bargaining relationship between Southwest and TWU Local 555, and disrupt the parties' long history of dealings. See *id.* at 31. Specifically, Southwest expresses concern with the portion of Arbitrator Jennings's award pertaining to the CBA's "zipper clause." See *id.* In his decision, Arbitrator Jennings concluded that "all past practices and prior agreements between Southwest and [TWU] Local 555 were 'nullified' under a standard clause in the parties' CBA known as a 'zipper clause.'" *Id.*; *see also* Southwest's Summary Judgment Appendix at 249 ("The present grievance (5001/16) is not barred by claim preclusion (*res judicata*) because the zipper clause of CBA Article 3 officially nullified and voided any previous agreement (whether the language of the specific article changes or not)."). For this reason as well, Southwest contends, the court should vacate the award.

Instead of addressing each of the above-mentioned points individually, TWU Local 555's response and counter motion emphasize the high degree of deference federal courts generally afford arbitration awards and focus on responding to Southwest's contentions about the CBA's language. According to TWU Local 555, in quoting the language from the CBA, Southwest overlooks "two conditions precedent found in the same sentence of the applicable section." TWU Local 555's Response at 4. Specifically, Article 3(A) states as follows:

> It is expressly understood and agreed that, *when this Agreement is accepted by the Company* and ratified by the

> membership of the Union, it shall be binding on both the
> Company and the Union and shall supersede any and all
> agreements existing or previously executed between the
> Company and the Union and/or any other organization
> representing the Employees covered hereunder.

TWU Local 555's Response at 4 (quoting Southwest's Summary Judgment Appendix

at 6) (emphasis added).  In challenging Southwest's interpretation of the contract,

TWU Local 555 poses the following question:  "if the last Union member's vote

necessary for ratification being cast magically gave the CBA full force and effect, why

would the parties have ever needed to finalize their agreement with their respective

signatures on the 16th of March?"  *Id.*

Rather than endeavoring to interpret the parties' CBA for itself, the court is

mindful of the narrow scope of its review.  So long as the arbitrator's decision draws

its essence from the contract in question, and does not ignore outright the CBA's

plain language in a manner that reflects a personal brand of industrial justice, the

court must defer to the arbitrator.  See *Continental Airlines*, 555 F.3d at 406.  In this

case, despite potential deficiencies in the arbitrator's reasoning, the court cannot

conclude that the arbitrator's interpretation was wholly divorced from the parties'

CBA.  While the court finds some of Southwest's arguments with respect to the

CBA's date of effectiveness compelling, the mere fact that a court is convinced that

the arbitrator committed serious error does not suffice to overturn an arbitrator's

decision.  *Id.*  Therefore, after careful consideration, the court concludes that

Arbitrator Jennings did not exceed his jurisdiction by ruling that TWU Local 555 filed its fourth grievance in a timely fashion.

2. *Whether Arbitrator Jennings was Biased Against Southwest*

Under the RLA, if there exists evidence of fraud or corruption by the arbitrator, the court need not defer to the arbitrator's decision. See *American Airlines*, 2012 WL 12872585, at *4. According to Southwest, leading up to and throughout the course of the parties' proceedings before him, Arbitrator Jennings exhibited a level of bias amounting to fraud or corruption under the RLA, requiring vacation of the award. *See* Southwest's Brief at 33. An arbitrator's actions amount to fraud when the arbitrator exhibits "a *complete* unwillingness to respond, and indifference, to any evidence or argument in support of one of the parties' positions." *Mesa Airlines, Inc. v. Air Line Pilots Association International*, No. CV11-2106-PHX-JAT, 2012 WL 4052359, at *5 (D. Ariz. Sept. 14, 2012) (emphasis in original) (quoting *Pacific & Artic Railway and Navigation Company v. United Transportation Union*, 952 F.2d 1144, 1148 (9th Cir. 1991)); *Finelli v. Southwest Airlines Company*, No. 3:02-MC-022-R, 2002 WL 1610585, at *4 n.4 (N.D. Tex. July 19, 2002) (Buchmeyer, J.), *aff'd*, 61 Fed. App'x 121 (5th Cir. 2003).

As evidence of this alleged bias, Southwest contends that Arbitrator Jennings demonstrated "hostile and erratic behavior" leading up to and during the arbitration proceedings. Southwest's Brief at 33. In particular, Southwest describes

uncomfortable interactions between Southwest representatives and Arbitrator Jennings regarding Southwest's prior decision to unilaterally remove Arbitrator Jennings from the panel, a hostile exchange between Arbitrator Jennings and one of Southwest's witnesses during the October 6, 2016 hearing, and Arbitrator Jennings's "total failure even to consider Southwest's arguments and evidence." See *id.* at 33-34. In response to Southwest's evidence, TWU Local 555 maintains that not only are Southwest's arguments as to bias disingenuous, but they are ultimately insufficient to establish bias with regard to his decision making. *See* TWU Local 555's Response at 5-9. Significantly, TWU Local 555 relies on the deposition testimony of the representative Southwest contends was on the receiving end of a large portion of Arbitrator Jennings's "hostile and erratic behavior." *Id.* at 7. When asked whether he believed Arbitrator Jennings was biased, the representative stated that while Arbitrator Jennings appeared confused and exhibited unusual behavior, he found it hard to say whether that behavior constituted bias. See *id.* (quoting Defendant/Counter-Claimant's Motion for Summary Judgment Response Appendix (docket entry 33), exhibit 1 at 15:1-8).

After reviewing the evidence and Arbitrator Jennings's award, the court agrees with TWU Local 555's position that while the allegations about Arbitrator Jennings's behavior are troubling, he did not exhibit bias rising to the level of fraud under the RLA. Upon reviewing his award, it is immediately apparent that Arbitrator Jennings

did not *completely* ignore Southwest's position on the timeliness issue as the opinion carefully dissects the arguments presented by both sides. *See*, *e.g.*, Southwest's Summary Judgment Appendix at 249-50. Ultimately, there exists a "strong federal policy favoring arbitration" and "fraud under the RLA requires an extremely high degree of improper conduct." *Mesa Airlines*, 2012 WL 4052359, at *5. In this case, Arbitrator Jennings's conduct, while concerning, simply did not meet the statutory standard. Therefore, the court declines Southwest's request to vacate the award on the ground of arbitrator bias.

### 3. *Remanding to a Different Arbitrator*

As referenced above, in its response to TWU Local 555's summary judgment motion, Southwest requests that "[t]o the extent the [c]ourt determines that a remand for further proceedings is warranted, Southwest submits that the [c]ourt should remand this dispute to a different arbitrator" for a hearing on the merits. Southwest's Response at 3. Such relief is appropriate, Southwest argues, because "(1) Arbitrator Jennings is no longer on the panel of arbitrators under the CBA[5] and therefore he does not have jurisdiction to issue an award in this or any other case;

---

[5] According to Southwest, in July 2016 it exercised its contractual right under the parties' CBA and, once again, removed Arbitrator Jennings from the panel of arbitrators. *Id.* at 4. Although TWU Local 555 filed a grievance challenging Southwest's decision to remove Arbitrator Jennings from the panel as premature under the terms of the CBA, Arbitrator Steven Briggs ultimately rejected TWU Local 555's grievance. *Id.*

and (2) Arbitrator Jennings's award in this case demonstrates that he is incapable of issuing a fair and impartial arbitral award in any matter involving Southwest." *Id.* Other than requesting a remand to Arbitrator Jennings, TWU Local 555 does not respond to this argument.

In reviewing an arbitration award under the RLA, the court has jurisdiction "to affirm the order of the [arbitrator], or to set it aside, in whole or in part, or it may remand the proceedings to [arbitration] for such further action as it may direct."  45 U.S.C. § 153 First (q); see also *United Transportation Union v. BNSF Railway Company*, 710 F.3d 915, 935 (9th Cir. 2013) ("The RLA broadly empowers the district court to provide a remedy that it deems appropriate.").

Although the court declines to vacate Arbitrator Jennings's award in its entirety, after weighing the parties' evidence in this case, the court, relying on its broad discretionary authority under the RLA, concludes that remanding the case to a different arbitrator is the appropriate course of action.  Because it appears that remanding the case to Arbitrator Jennings would only cause further strife in the parties' ongoing business relationship, this case is remanded to a new arbitrator -- to be selected pursuant to the parties' CBA -- for a hearing on the merits of TWU Local 555's grievance.

### III.  CONCLUSION

For the reasons stated above, the plaintiff's motion is **GRANTED** in part and **DENIED** in part, and the defendant's motion is **GRANTED** in part and **DENIED** in part.  To the extent that Arbitrator Jennings ruled on the merits of Southwest's fourth grievance, that portion of his award is **VACATED**.  The remainder of Arbitrator Jennings's award, the portions that address threshold issues related to arbitrability, is **AFFIRMED**.  Accordingly, the grievance is **REMANDED** to **arbitration before a new arbitrator** -- to be selected pursuant to the terms of the parties' CBA -- for a hearing on the merits.

**SO ORDERED**.

December 29, 2017.

_A. Joe Fish_

**A. JOE FISH**
**Senior United States District Judge**